1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

10

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12   JAMES BOSCH                                )   Case No.: C 04 3837 (SBA)
                                                )
13              Plaintiff,                      )   **ORDER ON CROSS MOTIONS**
                                                )
14         v.                                   )
                                                )
15   FIRST FINANCIAL INSURANCE                  )
     COMPANY, and DOES 1 through 100,           )
16                                              )
                Defendant(s).                   )
17                                              )
                                                )
18                                              )
                                                )
19   _____        )

20   This matter arises from an underlying incident in which the plaintiff was injured as a result of the

21   use and operation of a pickup truck owned by Menesh Mehta, which was being driven by Jorge

22   Velasquez at the time.  The pickup truck was used as part of Mehta's parking lot business

23   operations.  Plaintiff previously brought an action in state court to recover from parties claimed

24   responsible for the accident and injuries.  The pickup truck was insured specifically by

25   California State Automobile Association (CSAA) under an automobile insurance policy.  In that

26   underlying case, plaintiff was paid $100,000 under that policy by CSAA for his injuries caused

27   by the pickup truck.

28         Plaintiff then brought this separate action in which he claims that there was additional

insurance coverage for his injuries under a commercial general liability insurance policy issued

to Mehta's business by defendant First Financial Insurance Company (FFIC).  Defendant

1

1
2     contends that there is no coverage under the defendant's insurance for those injuries based on an
3     "auto exclusion" contained in Mehta's business' insurance policy with defendant (FFIC CGL
4     policy).  The parties have filed cross motions on the insurance coverage issue.
5         The language of the "auto exclusion" in defendant's general liability insurance policy
6     specifically states that "this insurance does not apply to" injury/damages arising out of the
7     ownership, maintenance, use, operation or entrustment to others of an "auto" that was "owned or
8     operated by or rented or loaned to any insured."  The parties agree, and the court finds, that the
9     undisputed facts here show that the injury for which plaintiff seeks insurance coverage "arose
10     out of" the "use" and/or "operation" of an auto (and that the pickup truck meets the policy's
11     definition of an "auto") as those terms are used in the exclusion.  Therefore, the first part of the
12     exclusion is present under these facts.  As to the second part of the exclusion, the court finds
13     that, under the undisputed facts, the pickup truck was "loaned to" an insured within the meaning
14     of those terms as used in that part of the exclusion.  For those reasons, the auto exclusion applies
15     here to bar coverage for plaintiff's injuries as a matter of law.
16     Therefore, as discussed more below, the court finds that defendant's motion for summary
17     judgment should be granted and plaintiff's cross motion for partial summary judgment should be
18     denied.
19         **DISCUSSION**
20     **1.Legal Standard**
21     Summary judgment is proper when the pleadings, discovery, and affidavits show that
22     there is "no genuine issue as to any material fact and that the moving party is entitled to
23     judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also *Southwall Techs., Inc. v. Cardinal*
24     *IG Co*., 54 F.3d 1570, 1575 (Fed. Cir.), cert. denied, 516 U.S. 987 (1995).  Material facts are
25     those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,
26     248 (1986).  Defendant here has the burden of demonstrating the absence of a genuine issue of
27     material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Plaintiff must set forth
28     specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

/ / /

**United States District Court** (vertical, left margin)

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**

### 2. The Underlying Facts

The record submitted by the parties reflects the following facts which the court finds are not in dispute.

#### a. The Vehicle Incident

On April 23, 2003, San Francisco police officer James Bosch was on foot when he saw and heard the driver of a blue Toyota pickup truck ("Pickup Truck") acting unusually. The Pickup Truck was stopped on the roadside on a surface street in San Francisco. Bosch approached to question the driver, Jorge Velasquez; Velasquez then tried to flee by abruptly pulling away in the Pickup Truck. Bosch became entangled in the Pickup Truck and was dragged along for several hundred feet as the Pickup Truck sped off. Bosch sustained injuries in the incident. Velasquez was arrested and charged criminally for causing the incident. The Pickup Truck was owned by Menesh Mehta and his wife. At the time of the incident, the Pickup Truck was insured by the Mehtas under a personal auto insurance policy they obtained from California State Automobile Association.

#### b. The Underlying Lawsuit

For his injuries, Bosch brought a negligence lawsuit against Velasquez and the owner of the Pickup Truck, Menesh Mehta, in San Francisco Superior Court ("underlying action"). Later, after learning that Mehta's parking lot business had liability insurance through the FFIC CGL policy, Bosch amended the complaint to add Mehta's parking lot businesses as defendants, under a theory that the business negligently hired/retained/entrusted Velasquez. CSAA provided a full and complete defense for Mehta and his business in the underlying lawsuit by assigning their defense to its panel counsel, Dan Winters and the law firm Winters, Kurg & Delbon. Winters defended Mehta on behalf of CSAA. FFIC declined to defend or indemnify Mehta or his business in connection with the allegations in the lawsuit because it determined that the CGL policy issued by FFIC did not provide any insurance coverage for the Pickup Truck incident.

An interim settlement agreement was reached in the underlying lawsuit. Even though it was not a party to the action, CSAA signed the agreement along with all the parties in the lawsuit. The agreement provided that CSAA would pay to Bosch its full policy limits

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**

($100,000) available under the auto insurance policy insuring Mehta's Pickup Truck.  CSAA also agreed that it would continue to provide a full defense to Bosch's claims against Mehta and his parking lot businesses.  The agreement also purported to assign to Bosch all of Mehta's rights as against FFIC under the CGL policy, with a covenant by Bosch not to execute upon any judgment obtained against the defendants in the underlying action.

After that interim agreement was purportedly reached in the underlying lawsuit, the parties then agreed to litigate the matter by way of binding arbitration rather than a trial in Superior Court.  Purportedly, an arbitration hearing was held thereafter and an arbitration award was issued.  The award was not confirmed by the court, nor was any actual judgment entered by the Superior Court.  Instead, counsel filed a document with the clerk of court which was entitled "Judgment" and which was neither signed by the court nor confirmed or otherwise approved by the court.

The arbitrator's decision included the following finding:  "On April 23, 2003, the date of the subject incident, defendant Jorge Velasquez, while in the course and scope of his employment with defendant, Minesh K. Mehta, dba Place 2 Park Corporation, negligently caused injuries and damages to plaintiff, James Bosch."

**c.Mehta's Parking Lot Business**

Mr. Minesh Mehta was the owner and operator of several parking lot businesses known under several names:  "Place 2 Park, LLC," "Safe Park Corporation" and "Car Park Management Corporation."  The businesses were operated as corporate entities, and Mehta was the sole owner of each of them (the businesses are collectively referred to for purposes of this motion as "Place 2 Park.").  At relevant times, Mehta ran Place 2 Park operations using a number of different parking lots in San Francisco, Oakland and San Jose.  Most of the lots were open air, with pay stations where parking customers deposited money.  Some of the lots had attendants who worked for the business and some did not.  Mehta hired Jorge Hernandes to work for his parking lot business.  Payroll records indicate that Hernandes was a salaried employee of the business known as "Place 2 Park, LLC" at relevant times.  Mehta testified at deposition that Hernandes was considered a "Supervisor."

4

1

2

3    Hernandes performed a number of duties for Mehta's business.  He was responsible for

4  visiting each of the lots in San Francisco and Oakland every weekday to oversee their operations.

5   It was his job to travel to each lot to make sure things were running smoothly and as intended by

6   Mr. Mehta.  To ensure operations ran properly, he handled a variety of tasks.  For example,

7   Hernandes would make sure that the appropriate workers were present at the particular lots that

8   were designed to be staffed with attendants.  He also would perform maintenance, such as

9  cleaning lots and hauling away garbage from them.  In addition, he would replace and repair pay

10  machines at the lots as needed - during a several-month period of time, he was responsible for

11  removing outdated manual pay stations at some lots to replace them with new automated pay

12  stations.  The manual pay stations were replaced at the business' San Francisco lots in response

13  to a city rule passed to require the stations to be automated so as to provide written pay receipts

14   to customers, a feature not available from the manual stations.

15    Mehta gave Supervisor Hernandes permission to incur expenses and to hire workers to

16  help him perform the various maintenance duties required at the lots and the jobs of switching

17   out old pay stations with new ones.  In turn, Mehta's business would reimburse Hernandes for

18  expenses incurred by Hernandes for the work he did at the lots, such as for the costs of tools or

19  supplies needed by Hernandes to do his work at the lots.  Mehta's business also would reimburse

20   Hernandes for payments made by Hernandes to workers that he lined up to help him in the

21    maintenance work.

22    **d. The Blue Toyota Pickup Truck**

23     Mehta and his wife owned the subject 1990 blue Toyota pickup Pickup Truck, which

24   they bought new.  For years Mehta used the Pickup Truck both as his personal vehicle and as

25   part of his parking lot business.  In 1998, he bought a sedan to use as his primary personal

26    vehicle and thereafter he used the Pickup Truck predominantly in his parking business.

27    Mehta gave Supervisor Hernandes permission to use the Pickup Truck for the business

28  purposes of Place 2 Park.  According to Mehta, Hernandes was only to use the Pickup Truck for

business purposes.  Mehta also permitted Hernandes to keep his own set of keys to the Pickup

Truck.  When not being driven, the Pickup Truck was usually kept in the garage at Place 2

5

Park's business office located on Sutter Street in San Francisco.

For years, Hernandes used the Pickup Truck as part of his job at Place 2 Park.  He understood he had permission from Mr. Mehta to use the Pickup Truck for company business.  He drove the Pickup Truck frequently from lot to lot to check on the operations at each place.  He drove the Pickup Truck from San Francisco to Oakland to check on the business' lots there.  He used the Pickup Truck to haul away garbage from parking lots.  He also used the Pickup Truck to replace the old pay stations with new ones.  At times, he would drive other workers in the Pickup Truck as part of those tasks.

Jorge Velasquez performed some work for the benefit of Mehta's business, including working with Supervisor Hernandes to replace old pay stations with new equipment at lots in both San Francisco and Oakland.  For those purposes, Velasquez was driven as a passenger in the Pickup Truck by Hernandes when working at different lots.

### 3.    The Defendant's Insurance Policy

Mehta obtained for his parking lot business a liability policy from FFIC.  The policy contained provisions referred to as the "auto exclusion."  The clause excludes coverage regarding bodily injury or property damage from certain motor vehicles under the following language.

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. …

\* \* \*

**b.**   This insurance applies to "bodily injury" and "property damage"

**United States District Court**

1

2

3         **(1)**    The "bodily injury" or "property damage" is caused by an

4                  "occurrence" that takes place in the "coverage territory"; and

5

6         **(2)**    The "bodily injury" or "property damage" occurs during the

7                  policy period.

8

9         * * *

10

11

12    **2.**      **Exclusions**

13

14    This insurance does not apply to:

15

16         * * *

17

18        **g.**      **Aircraft, Auto Or Watercraft**

19

20         (1)    "Bodily injury" or "property damage" arising out of the

21                  ownership, maintenance, use, operation, "loading or unloading",

22                  or entrustment to others of any aircraft, "auto" or watercraft

23                  owned or operated by or rented or loaned to any insured.

24         * * *

25

26    **DECLARATIONS**

27

28         * * *

7

Named Insured…

Safe Park Corporation, Car Park Management Corp. DBA Place 2 Park Corp.

* * *

Form of Business:…

X Organization (other than Partnership or Joint Venture)

* * *

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.

* * *

**SECTION II – WHO IS AN INSURED**

**1.**     If you are designated in the Declarations as: . . . [a] partnership or joint venture,… [a] limited liability company,. . . . [or] [a]n organization other than a partnership, joint venture limited liability company, you are an insured.

**2.**     Each of the following is also an insured:

**United States District Court**

    **a.**    Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

    * * *

/ / /

## SECTION V – DEFINITIONS

    **2.**  "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.  But "auto" does not include "mobile equipment."

    **3.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

    * * *

## INSURANCE COVERAGE ANALYSIS

    **1.**    **The Insuring Agreement and Defendant's Burden of Proof**

The insuring agreement in the FFIC CGL policy provides that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . to which this insurance applies."  In the language containing the auto exclusion, the FFIC CGL policy goes on to provide that "This insurance does not apply to: . . . "bodily injury" arising out

9

1

2    of the . . . use [or] operation . . . of any "auto"[1] . . .owned or operated or rented or loaned to any

3    insured."

4          Under these facts, plaintiff has shown that he sustained "bodily injury" as those terms are

5    used within the insuring agreement of the policy, subject to the operation of the auto exclusion.

6    Defendant bears the burden of proof on the issue of whether facts surrounding the injury fall

7    within the auto exclusion so as to bar coverage under the policy.  *MacKinnon v. Truck Ins. Exch.*

8    (2003) 31 Cal.4th 635, 648.

9          **2.      The "Auto Exclusion"**

10         The exclusionary language at issue contains two essential parts, each of which needs to

11   apply under the facts in order to exclude liability for the injury from coverage under the FFIC

12   CGL policy.  Each is addressed separately.

13                **a.      Was Pickup Truck Used or Operated By An Insured?**

14         First, the loss must have arisen out of either the "use" or "operation" of the pickup truck.

15   The parties agree that the plaintiff's injury did arise out of both the use and operation of the

16   pickup truck.  The court concurs, finding that substantial evidence exists to support that

17   conclusion.[2]  We then turn to the second part of the exclusion.

18                **b.      Was Pickup Truck "Loaned to" An Insured?**

19         The second part of the exclusion requires that the auto must have been "owned or

20   operated by or rented or loaned to any insured."  On this point, plaintiff argues several points.

21   First, he contends that this part of the exclusion does not apply because, at the time of the

22   incident, neither the operator of the Pickup Truck (Velasquez) nor the owner of the Pickup Truck

23   (Mehta) met the definition of being an "insured" under the FFIC CGL policy.

24   _____

25   [1] The parties do not dispute that the Pickup Truck being driven by Velasquez at the time of plaintiff's

26   injuries met the policy's definition of an "auto," and the court so finds under these facts.

27   [2] In the first part, the exclusion also includes the terms "ownership," "maintenance," "loading or

28   unloading," and "entrustment to others."  However, it is not necessary to consider those terms, as the

     court finds that the first part of the exclusion applies here because the injury arose from both the use and

     operation of the truck.

United States District Court

1

2      The court need not consider those arguments because of the undisputed facts that show

3      that the Pickup Truck was clearly "loaned to" Place 2 Park, the named insured business, at the

4      time of the incident.  For that reason, the second part of the exclusion applies.

5      The owner of the Pickup Truck (Mehta) permitted it to be used by the insured Place 2

6      Park business as part of its business operations.  The Pickup Truck was garaged at the Place 2

7      Park business location.  It was used predominately (if not almost exclusively) for that business.

8      Employees were allowed to keep keys to the truck in order to use it.  Mehta himself used the

9      Pickup Truck for the business.  Mehta authorized Hernandes to use the Pickup Truck for the

10     business and Hernandes used it for company business most of the time.  He used it to move

11     signs, pay stations and trash .

12     Under those circumstances, the only way to characterize the understanding between

13     Mehta and the insured company, Place 2 Park, is to call it a loan of the Pickup Truck by Mehta

14     to the company.  His lending the truck to the business thereby triggered the operation of the

15     exclusion – the Pickup Truck clearly was "loaned to" an insured, to wit, it was loaned to the

16     specifically named insured business itself, Place 2 Park.

17     Plaintiff also argues that the exclusion would apply on the "loaned to" basis only if the

18     actual use of the Pickup Truck at the time of the injury fell within the specific use for which

19     Mehta permitted it to be utilized for company purposes.  On this point, plaintiff argues that

20     Velasquez did not have authority to drive the Pickup Truck at any time, and that his use of the

21     truck when the injury occurred was outside the permitted manner under which Mehta authorized

22     it to be used in the business.

23     The court finds plaintiff's argument to lack merit.  The policy language does not support

24     such a strained construction.  The auto exclusion does not limit its application in the restrictive

25     manner plaintiff urges.  All that is necessary to be shown under these facts is that the injury arose

26     from the use/operation of an auto that was loaned to any insured.  The facts show that that is

27     exactly what occurred here.  It is of no moment whether, at the time of the injury, the actual use

28     of the auto did or did not comply with the terms and conditions under which the loan was made.

Plaintiff's argument also is contrary to California law.  *Belmonte v. Employers Ins. Co.*

11

United States District Court

1

2  (2000) 83 Cal.App.4[th] 430, involved facts nearly identical to those here.  In *Belmonte*, the

3  plaintiff owned a store covered by a commercial general liability policy containing an auto

4  exclusion that was materially identical to that involved here.  The plaintiff's 16-year-old niece in

5  *Belmonte*, who did not have a driver's license, took and used the plaintiff's car without the

6  plaintiff's permission.  The niece then hit and injured another person while driving the car.  The

7  insurer denied coverage based on the auto exclusion.

8        The *Belmonte* plaintiff attempted to argue that the auto exclusion did not apply because

9  he was not operating the vehicle himself, and that the auto exclusion only applied to uses by the

10  named insured himself.  The Court of Appeal rejected the plaintiff's argument, finding that the

11  language of the exclusion was explicit in expressly excluding bodily injury "arising out of the …

12  use of any 'auto' … owned or operated by any insured."  *Id.* at p. 435.  The court concluded that,

13  because the injuries arose out of the niece's use of a car owned by the insured, the exclusion

14  barred coverage.  It did not matter that she was not an insured under the policy.  It also did not

15  matter that she did not have the insured's permission to use the vehicle.  See also *Ace American*

16  *Ins. Co. v. Walker* (2004) 121 Cal.App.4[th] 1017; *Providence Wash. Ins. v. Valley Forge* (1996)

17  42 Cal.App.4[th] 1194; *Gurrola v. Great Southwest Ins. Co.* (1993) 17 Cal.App.4[th] 65; and *Ins. Co.*

18  *v. Bucaro* (1981) 101 Ill.App.3d 919, 428 N.E.2d 979.

19        In addition, in the case at bar, the facts do not support plaintiff's legal argument in any

20  event.  There is no dispute that Hernandes was authorized to hire workers such as Velasquez to

21  help him and no dispute that he was authorized to drive workers in the Pickup Truck as part of

22  that task.  There is no evidence showing that the operation of the Pickup Truck at the time of the

23  injury was not within the purpose for which Mehta loaned it to the business.  In fact, the award

24  issued in connection with the underlying action (which forms the basis upon which plaintiff

25  brings this action) explicitly determined that Velasquez was in fact operating the Pickup Truck

26  as part of the Place 2 Park business and within the purpose for which Mehta loaned it to the

27  business.  On this, the arbitrator wrote:  "On April 23, 2003, the date of the subject incident,

28  defendant Jorge Velasquez, while in the course and scope of his employment with defendant,

Minesh K. Mehta, dba Place 2 Park Corporation, negligently caused injuries and damages to

*United States District Court*

12

plaintiff, James Bosch."

For these reasons, the court finds that the second prong of the auto exclusion applies here, such that plaintiff's claims for bodily injury are not subject to the insurance provided under the FFIC CGL policy.

**CONCLUSION**

The parties have filed cross motions on this coverage issues.  Defendant filed a motion for summary judgment, contending that the plaintiff's complaint, and the causes of action therein (breach of insurance contract and breach of the implied covenant of good faith and fair dealing "insurance bad faith") are barred as a matter of law because of the auto exclusion contained in its insurance policy.  Plaintiff has filed a motion for partial summary judgment on the same issue, as well as others.[3]

On the undisputed facts in the record, the court finds that defendant did not breach the insurance contract because no benefits were due as a matter of law, thereby causing plaintiff's first cause of action for breach of contract to fail.  As no claim for insurance bad faith may be maintained absent any breach of insurance obligations, the second cause of action for insurance bad faith also fails as a matter of law.  *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4[th] 1, 35; *Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1153.  For these reasons, the court finds that defendant's motion for summary judgment should be granted, and that judgment in favor of defendant shall be entered, with defendant to recover costs.

---

[3] Because the auto exclusion applies here to bar insurance coverage for the loss, it is not necessary for the court to address the various other issues raised by the cross motions.

United States District Court

1

2        For the same reasons that this court grants defendant's motion for summary judgment,

3    the court shall and does hereby deny plaintiff's motion for partial summary judgment.  Such

4    denial is based on the court's determination of the same insurance coverage issues that form the

5    basis of defendant's motion, which the court has granted.

6        IT IS SO ORDERED.

7

8    Dated: 6/6/06                    *Saundra B Armstrong*
                                      SAUNDRA BROWN ARMSTRONG
9                                     United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**